**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| SHEREE D. MURPHY,<br>Petitioner,<br>v.<br>WENDY JACKSON,<br>Respondent. | No.<br><br>PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 |

Pursuant to 28 U.S.C. § 2254, Petitioner Sheree Dionne Murphy, through counsel, submits this Petition for Writ of Habeas Corpus on the grounds that she received ineffective assistance of trial counsel in violation of her right to counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution; the State improperly commented on Petitioner's silence at trial in violation of the Due Process clauses of the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution; and the State knowingly presented misleading evidence in violation of the Due Process clauses of the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution. Accordingly, Petitioner alleges as follows:

## INTRODUCTION AND FACTS COMMON TO ALL GROUNDS FOR RELIEF

1. On June 7, 2007, a tragic fire engulfed much of what had been the Budget Inn motel in Riverdale, Georgia, leaving five people dead and others injured.

2. In light of the multiple deaths and substantial media attention, local authorities experienced significant pressure to conclude prematurely that the fire was an arson and to convict someone for causing it.

3. Despite promising leads and evidence indicating motive on the part of other viable suspects, authorities prematurely halted the investigations of these other suspects, one of whom had fled suddenly to Colorado, to focus on Petitioner. Notwithstanding the absence of concrete evidence against her, Petitioner was an easy target for the State because she struggled with homelessness, substance abuse, and had little family in the area. Personal struggles aside, however, Petitioner always has maintained her innocence. She played no role in the fire that consumed the Budget Inn.

4. After repeatedly failing to convince a grand jury to indict Petitioner, the State eventually obtained a grand jury indictment by, on information and belief, introducing alleged facts that turned out to be false or misleading.

5. Following the indictment, the State created a fictional and unsubstantiated trial narrative claiming Petitioner started the fire by stealing lighter fluid from a nearby convenience store, spraying the fluid on abandoned mattresses on the Budget Inn property, and igniting them.

6. The State's theory rested on claims and facts that, on information and belief, the State knew or should have known to be false. For example, Petitioner could not have accessed the lighter fluid as alleged by the State because the Chevron gas station convenience store exclusively stored its lighter fluid behind the counter, and no evidence whatsoever showed Petitioner ever had access to this area of the convenience store.

7. Without tangible, direct evidence, the State's case relied heavily on fact witnesses whose testimony the State knew or should have known to be unreliable. For example, the State's primary witnesses included Physonia Gatling, who testified that Petitioner confessed guilt to her when she and Petitioner shared a jail cell. The State was aware, however, of records showing that Petitioner never shared a cell with Ms. Gatling, but nonetheless placed significant weight on her obviously fabricated testimony. The State also relied substantially on the testimony of Starla Carr, who later recanted statements she gave to authorities while in search of reward money, and Andy Mason, who offered mistaken and

incorrect testimony under pressure from the State. The testimony of these, and other, witnesses was not only unreliable and misleading, but severely prejudiced the jury against Petitioner. But for the unreliable, mistaken, and misleading testimony from these witnesses, there is more than a reasonable probability that the jury would have found Petitioner not guilty.

8. Compounding the problems with the State's case, Petitioner's trial counsel was constitutionally deficient. Despite significant available resources, trial counsel did not adequately investigate the case to uncover material exculpatory evidence; untimely disclosed critical evidence which led to the exclusion of that evidence from trial; failed to utilize key witnesses and pieces of evidence that would have exonerated Petitioner in the eyes of any reasonable jury; and failed to object when the State's closing argument expressly invoked Petitioner's silence at trial as an indication of guilt. Each of these errors alone prejudiced Petitioner and materially impacted the outcome of Petitioner's trial. Combined, they formed a constitutionally deficient defense that prevented Petitioner from receiving constitutionally guaranteed representation.

9. Petitioner is innocent of the crimes for which she has been convicted. And the judicial process, which resulted in her conviction, violated her

constitutional rights. Accordingly, she respectfully requests that this Court issue a Writ of Habeas Corpus.

## THE PARTIES

10. Petitioner is incarcerated at Pulaski State Prison in Hawkinsville, Pulaski County, Georgia, serving the sentences imposed on her by the Superior Court of Clayton County, Georgia, on January 30, 2012, for her convictions of felony murder and arson in the first degree, aggravated battery, and cruelty to a child in the first degree.

11. Respondent Wendy Jackson is the warden of Pulaski State Prison. As such, she is charged with maintaining custody over Petitioner.

## JURISDICTION AND VENUE

12. Petitioner is incarcerated at Pulaski State Prison, which is located in Pulaski County, Georgia, in this judicial District. Therefore, venue is proper and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

13. Petitioner was arrested on November 31, 2007. The State of Georgia tried unsuccessfully on multiple occasions to obtain a grand jury indictment of Petitioner. Not until June 17, 2009 did a grand jury indict Petitioner—after she had already been incarcerated for nearly a year and a half. Following a jury trial

that took place from December 5 to December 13, 2011, Petitioner was convicted of felony murder, arson in the first degree, aggravated battery, and cruelty to a child in the first degree.

14. On January 30, 2012, the Superior Court of Clayton County sentenced Petitioner to five consecutive life sentences without the possibility of parole.

15. Petitioner timely moved for a new trial on December 20, 2011 and February 2, 2012. She filed an amended motion for a new trial on August 20, 2013. The Superior Court of Clayton County denied her request for a new trial on January 13, 2014.

16. Petitioner noticed an appeal of her convictions to the Supreme Court of Georgia on January 23, 2014. On June 20, 2016, the Supreme Court of Georgia affirmed Petitioner's convictions. *Murphy v. State*, 299 Ga. 238 (2016).

17. Petitioner timely petitioned the Superior Court of Pulaski County for a Writ of Habeas Corpus. Specifically, Ms. Murphy filed a habeas petition (*Murphy v. Mickens*, Civil Action No. 2017V-15411) with that Court on September 7, 2017, within four years after the date the conviction became final, as required by O.C.G.A. § 9-14-42(c).

18. Habeas counsel hired two investigators who investigated the facts and circumstances underlying the fire and Petitioner's trial and appellate proceedings. Habeas counsel further worked diligently to uncover additional facts.

19. The Superior Court of Pulaski County held a three-day evidentiary hearing on Ms. Murphy's state habeas petition on June 1, 2021, October 27, 2021, and January 4, 2022.

20. On August 13, 2024, the Superior Court of Pulaski County entered an order denying Ms. Murphy's state habeas petition. A true and correct copy of that order is attached as **Exhibit A**.

21. On November 14, 2024, Ms. Murphy timely filed an Application for a Certificate of Probable Cause with the Georgia Supreme Court (*Murphy v. Mickens*, Case No. S25H0371).

22. Following briefing by the parties, the Georgia Supreme Court denied Petitioner's Application for a Certificate of Probable Cause on September 16, 2025. A true and correct copy of that order is attached as **Exhibit B**.

23. The Georgia Supreme Court transmitted the remittitur on October 1, 2025. A true and correct copy of the remittitur is attached as **Exhibit C.**

24. Petitioner exhausted all state remedies available for all claims asserted below prior to seeking the current relief.

25. This Petition is timely filed, pursuant to 28 U.S.C. § 2244(d).

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS**
**(Ineffective Assistance of Trial Counsel)**

26. Counsel's acts and omissions at trial violated Petitioner's rights to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraphs XII and XIV of the Georgia Constitution.

27. Trial counsel was deficient in numerous ways, including:

a. **Failure to investigate adequately.** Trial counsel failed to reasonably or adequately investigate the State's case or Petitioner's defenses. Among other things, trial counsel failed to contact and interview readily available witnesses with material information that would have undermined the State's evidence offered against Petitioner, including but not limited to the following witnesses:

   i. Charles Timothy Gray;

   ii. Britney Allison Jefferson;

   iii. Bobby Patel; and

   iv. Dante Milon.

b. **Failure to impeach adequately the State's key witnesses at trial.** The State's case relied very heavily on trial testimony from two critical witnesses, Starla Carr and Physonia Gatling. Starla Carr testified that Petitioner made an incriminating statement before the fire at issue in the case. Physonia Gatling was a jailhouse informant who testified that Petitioner made incriminating statements after Petitioner's arrest while Petitioner was Gatling's cellmate. It is quite unlikely that the jury would have found either witness's testimony credible if trial counsel had properly impeached these witnesses with documents and information that were in trial counsel's possession prior to trial. But trial counsel did not do so.

i. For example, before trial, Ms. Carr signed a statement recanting her account to authorities that inculpated Petitioner and stated that she was pressured by police to say that Petitioner had started the fire. A true and correct copy of this statement is attached as **Exhibit D**.

ii. Petitioner's trial counsel never impeached Ms. Carr with the statement and never introduced the statement into evidence.

iii. Ms. Carr's more recent affidavit is attached as **Exhibit E**.

iv. Similarly, before trial, trial counsel procured jail records showing that Ms. Gatling and Petitioner were not in fact cellmates.

v. But trial counsel did not produce the jail records to the State prior to trial, so Judge Carter barred their introduction at trial. As a result, trial counsel failed to use the records to impeach Ms. Gatling or to introduce the records as evidence.

vi. Additionally, Andy Mason admitted after trial that the testimony he gave at trial was mistaken and that he felt pressured by the State to implicate Petitioner. Attached as **Exhibit F** is a true and correct copy of an affidavit from Mr. Mason dated September 28, 2017.

c. **Failure to object effectively to the State's new expert testimony.** Trial counsel failed to object effectively to the State's expert testimony introduced, for the first time, at trial, and not previously disclosed during a *Harper* hearing. This failure significantly prejudiced Petitioner.

d. **Failure to challenge the State's reliance on junk science.** Trial counsel failed to challenge effectively the State's reliance on

testimony that one form of petroleum distillate could morph into another during a fire. That testimony was scientifically wrong and has no basis. Nevertheless, the State used it to claim that the lighter fluid the State wrongly claimed Petitioner stole was the accelerant used to start the fire. Trial counsel failed to effectively challenge the State's bankrupt science. Trial counsel's failure severely prejudiced Petitioner because effectively challenging the State's incorrect scientific theory would have shown that, even if Petitioner had stolen the lighter fluid (which she did not), the lighter fluid was not used to start the fire at the Budget Inn.

e. **Failure to object effectively to the State's videotape testimony.** Trial counsel failed to object effectively to the State's introduction of testimony from law enforcement officers purporting to identify Petitioner on videotape at a Chevron gas station. This failure prejudiced Petitioner because the State misused this video footage to claim incorrectly that Petitioner stole the lighter fluid, which she then supposedly used to start the fire at the Budget Inn.

f. **Failure to introduce critical witnesses at trial.** Petitioner's trial counsel failed to subpoena or call to testify readily available witnesses

who possessed exculpatory information that would have undermined the State's evidence offered against Petitioner, including but not limited to the following:

i. Johnson Okanlawon would have testified, among other things, that the lighter fluid that the State wrongfully claimed Petitioner stole to start the fire was kept exclusively behind the counter where he, as the cashier, sat at the Chevron convenience store. He further would have testified that: he was working at the convenience store at the time the State claimed Petitioner stole the lighter fluid; Petitioner never had access to the area where the lighter fluid was stored; he did not sell the lighter fluid or any other accelerant to Petitioner; and it is impossible that Petitioner could have stolen it. Attached as **Exhibit G** is an affidavit from Mr. Okanlawon.

ii. Joyce Strom;

iii. Darrell ("Dell") Washington;

iv. Sharika Henry;

v. Quantavia Moore;

vi. Dante Milon; and

vii. Bobby Patel.

These failures substantially prejudiced Petitioner.

g. **Failure to allow Petitioner to testify at her trial, against her wishes.** Petitioner wished to testify on her own behalf at trial but was precluded from doing so. The failure of trial counsel to allow her to testify significantly prejudiced Petitioner.

h. **Failure to object to the State's reliance in closing arguments on Petitioner's silence as an indication of guilt.** In his closing argument at trial, Assistant District Attorney Jason Green expressly referenced Petitioner's constitutional right to remain silent as an indication of her guilt, stating:

> Ladies and gentlemen, Sheree Murphy has no defense. No defense, and I mean that literally and I mean that figuratively. . . . The evidence proved that Sheree Murphy is guilty beyond a reasonable doubt. Her presence, her words, her actions, ***the silence***, all of them come together. What Mr. Frey, on behalf of the Defense, would have you do is try and look at little piece of evidence and say: Look, this doesn't prove anything. But what he won't do, what he didn't do – excuse me, what he failed to do was to look at it all together. To look at it all together, because when you put all the evidence together you know that she's guilty. All the evidence before, during and after this fire show that she's guilty. (emphasis added)

Trial counsel did not object or move for a mistrial, despite the fact that the prosecution's commentary on Petitioner's silence in his closing argument is unequivocally unconstitutional. Trial counsel's failure to object was not based on the education, experience, or professional judgment of trial counsel. And it severely prejudiced Petitioner by (a) causing the jury to interpret Petitioner's silence as an indication of guilt and (b) precluding counsel from raising this constitutional violation as a basis for reversal or remand on direct appeal.

i. **Failure to investigate, discover, and present other material evidence that would have had an impact on the jury's decision.**

28. Trial counsel functioning in accord with reasonable professional standards would not have engaged in any of the acts or omissions described above.

29. The acts and omissions set forth above were not based on the education, experience, or professional judgment of trial counsel.

30. The deficiencies described above, individually and cumulatively, prejudiced Petitioner and undermined the integrity and reliability of the proceedings against Petitioner.

31. But for trial counsel's acts and omissions, there is a reasonable probability that the result of the trial would have been different, and Petitioner would have been found not guilty.

32. As a result of the ineffectiveness of Petitioner's trial counsel and the breakdown in judicial process of her trial, Petitioner was denied a constitutionally adequate defense.

33. Trial counsel's acts and omissions were such that there was the complete absence of adversarial testing of the State's evidence.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**
**(The State Violated Petitioner's Due Process Rights By Using Petitioner's Silence As Evidence Of Guilt)**

34. During closing argument at trial, Assistant District Attorney Jason Green invoked Petitioner's constitutional right to remain silent as an indication of her guilt, stating:

> Ladies and gentlemen, Sheree Murphy has no defense. No defense, and I mean that literally and I mean that figuratively. . . . The evidence proved that Sheree Murphy is guilty beyond a reasonable doubt. Her presence, her words, her actions, ***the silence***, all of them come together. What Mr. Frey, on behalf of the Defense, would have you do is try and look at little piece of evidence and say: Look, this doesn't prove anything. But what he won't do, what he didn't do – excuse me, what he failed to do was to look at it all together. To look at it all together, because when you put all the evidence together you know that she's guilty. All the evidence before, during and after this fire show that she's guilty." (emphasis added)

35. The State's misuse of Petitioner's right to remain silent in its closing argument deprived Petitioner of a fair trial and constitutes prosecutorial misconduct.

36. The prosecutor's invocation of Petitioner's right to remain silent on closing argument prejudiced Petitioner and undermines confidence in the reliability of the jury's verdict with respect to every count on which Petitioner was convicted.

37. The outcome of the trial would have been different had the prosecution not violated Petitioner's due process rights. Indeed, but for this violation of Petitioner's due process rights, there is a reasonable probability that the jury would have found Petitioner not guilty.

38. As such, the prosecution's misconduct violated Petitioner's rights to a fair and reliable determination of her guilt or non-guilt in accordance with the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS
## (The State Violated Due Process By Relying On Evidence It Knew Was Unreliable And Misleading)

39. The State further violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when it presented

and relied on evidence that it knew was inaccurate and unreliable to obtain a conviction against Petitioner.

40. As one example, the State presented the testimony of Physonia Gatling, the jailhouse informant, despite being aware of prior inconsistent statements by Gatling, Gatling's proclivity to lie, and other evidence that rendered Gatling's testimony incredible and unreliable. Ms. Gatling is a three-time convicted felon (including for fraud). At the time she spoke with authorities, she faced up to 110 years in jail for aggravated assault, cruelty to children, and related charges. On information and belief, after speaking with the State about Petitioner, Ms. Gatling's sentence was reduced to several months on probation.

41. In another example, the State presented video evidence of an aisle in the Chevron gas station convenience store purporting to show where lighter fluid was sold in the store. On information and belief, the State offered this testimony despite knowing that the grainy video showed only motor oil, not lighter fluid, and that the lighter fluid was actually stored and sold behind the counter where the cashier sat.

42. In closing arguments, the State's attorneys made false statements of fact relating to these and other issues.

43. The misleading and unreliable evidence offered by the State prejudiced Petitioner and undermines confidence in the reliability of the jury's verdict with respect to every count on which Petitioner was convicted.

44. The evidence was material because it was connected to the facts and circumstances of the arson at issue and the credibility of the State's witnesses, among other things.

45. The outcome of the trial would have been different had the prosecution not violated Petitioner's due process rights and presented the jury with unreliable evidence. Indeed, but for the violations of Petitioner's due process rights, there is a reasonable probability that the jury would have found Petitioner not guilty.

46. As such, the prosecution's misconduct violated Petitioner's rights to a fair and reliable determination of her guilt or non-guilt in accordance with the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, PETITIONER RESPECTFULLY REQUESTS THAT THIS COURT:

1. Grant her Petition for a Writ of Habeas Corpus and order her released;

2. Enter appropriate findings of fact and conclusions of law to the end that Petitioner be discharged from her unconstitutional confinement and restraint; and

3. Grant such other relief as law and justice require.

Dated: October 14, 2025

Respectfully submitted,

/s/ *Charles H. Hooker III*

Charles H. Hooker III
Georgia Bar No. 375622
Jessica W. Truelove
Georgia Bar No. 383586
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE
Atlanta, Georgia 30309
chooker@ktslaw.com
jtruelove@ktslaw.com

*Attorneys for Petitioner Sheree D. Murphy*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 was served by electronic mail upon counsel for Respondent, addressed as follows.

Ronald Edward Daniels
Special Assistant Attorney General
Daniels Law LLC
P.O. Box 4939
Eastman, GA 31023
ron@dlawllc.com

Michael Oldham
Senior Assistant Attorney General
Clint Malcolm
Senior Assistant Attorney General
Meghan Hill
Senior Assistant Attorney General
40 Capitol Square, SW
Atlanta, GA 30334
moldham@LAW.GA.GOV
cmalcolm@law.ga.gov
mhill@LAW.GA.GOV

Dated: October 14, 2025.

/s/ *Charles H. Hooker III*
Charles H. Hooker III
Georgia Bar 375622
chooker@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorney for Petitioner Sheree Murphy*